**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BENNY ANDERSON,** | : | |
| | | **CIVIL ACTION NO. 3:23-1499** |
| **Plaintiff** | : | |
| | | **(JUDGE MANNION)** |
| **v.** | : | |
| **GEORGE ROLSTON,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Plaintiff Benny Anderson, who was incarcerated at the State Correctional Institution in 1100 Pike Street, Huntingdon, Pennsylvania ("SCI-Huntingdon") during all times relevant to this lawsuit, filed this *pro se* Section 1983 action, asserting an Eighth Amendment conditions of confinement claim when the ceiling above him collapsed and fell on his head and neck as he was cleaning his cell room floor. (Doc. 13). For the following reasons, the Court will **DENY** Defendant's Motion for to Dismiss **(Doc. 18)** and direct Defendant to file an answer to the Amended Complaint.

## I.    BACKGROUND

Plaintiff, Benny Anderson, is a state prisoner who was confined at SCI-Huntingdon at all times relevant to his Amended Complaint. In June of 2020, while housed on B-Block in cell room number 258, Anderson noticed that

water began to leak from the ceiling in his cell. (Doc. 13, ¶5). As a correctional officer was making his rounds, Anderson called the officer over and informed him of the leak. (*Id.*, ¶6). The officer inspected the ceiling and told Anderson that he would report the issue. (*Id.*). A few hours later, Anderson was moved to another cell. (*Id.*).

On July 2, 2020, Anderson was transported to an outside hospital for a medical procedure. (*Id.*, ¶7). The next day, upon his return to the correctional facility, Anderson was required to quarantine for fourteen days per the facility's COVID-19 policies. (*Id.*). After his quarantine period concluded, Anderson was placed again in cell 258 on B-Block. (*Id.*, ¶8). Upon entering his cell, Anderson noticed not only that the leaking ceiling had not been repaired but that it had also deteriorated to the point that pieces of the ceiling was starting to fall to the floor. (*Id.*, ¶9). Anderson immediately reported the issue to Correctional Officer Fortson, who told Anderson he would report the problem but nevertheless asked Anderson to return to his cell or face a misconduct report. (*Id.*). Anderson complied with the directive. (*Id.*).

The following day, around July 18, 2020, Anderson informed Defendant Unit Manager Rolston of the situation he was facing with the leak in his cell, the deteriorating state of his ceiling, and his continued assignment

- 2 -

to the cell. (*Id.*, ¶10). Defendant Rolston promised to inform the maintenance staff, but did not move Anderson to another cell. (*Id.*, ¶11). About a week later, with no repairs made, Anderson sees Defendant Rolston again and reminds him of the leak—expressing his safety concerns about living in that cell. (*Id.*, ¶12). Defendant Rolston tells Anderson that maintenance would get around to it. (*Id.*).

Ten months pass without repairs. Then, on May 16, 2021, as Anderson was cleaning the water off of his cell room floor underneath the leaking ceiling, a portion of the ceiling fell and struck him on the head and neck. (*Id.*, ¶13). Anderson suffered abrasions and lacerations at the time of the injury, and continues to suffer headaches, dizziness, blurred vision, soreness/stiffness in the head and neck, as well as anxiety and emotional distress. (*Id.*, ¶14).

On November 21, 2022, Anderson filed his Complaint, pursuant to 42 U.S.C. §1983, in the Huntingdon County Court of Common Pleas alleging two defendants violated his Fifth, Eighth, and Fourteenth Amendment rights when they failed to repair the ceiling in his cell and prevent a piece of it from falling and striking him in the head. (Docs. 1-1 and 1-2). The Complaint did not contain sufficient information to conduct sheriff service, so the Court of Common Pleas would not initially permit the action to proceed, and did not

- 3 -

certify the Complaint for service until August 4, 2023. (Doc. 1-1, pp. 3-4). The original defendants received Plaintiff's Complaint by way of sheriff service on August 9, 2023. (Doc. 1-2).

After reviewing the Complaint, the original defendants removed this matter to this Court for a resolution of Plaintiff's federal constitutional claims. (Doc. 1). On September 8, 2023, the original defendants filed a Motion to Dismiss the Complaint (Doc. 3). On October 23, 2023, Plaintiff filed a Response to the Motion to Dismiss. (Doc. 9). In his Response, Plaintiff proposed that: (1) the two original defendants be removed from the lawsuit to be renamed at another time; and (2) he be permitted to submit an amended complaint naming Defendant Rolston. (*Id.*). The Court granted both requests. (Doc. 10). Consequently, Plaintiff submitted an Amended Complaint on December 13, 2023. (Doc. 13). Defendant Rolston filed the present Motion to Dismiss the Amended Complaint, arguing that the actions alleged do not rise to the level of an Eighth Amendment conditions of confinement violation. (Doc. 18). The motion is ripe for review.

## II.   **LEGAL STANDARD**

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6)

of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, BU.S.B, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal

conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). As the Supreme Court held in *Twombly*, in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In keeping with the principles of *Twombly*, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In *Iqbal*, the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Id.*, at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

> *Id.*, at 679.

Thus, following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words,

- 7 -

a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

*Fowler*, 578 F.3d at 210-211.

As the Court of Appeals has observed:

The Supreme Court in *Twombly* set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in *Iqbal*. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint which pleads facts "merely consistent with" a defendant's liability, [ ]

"stops short of the line between possibility and plausibility of 'entitlement of relief.' "

*Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied, 132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Iqbal*, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*, at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950). Guided by these legal tenets, we review the Plaintiff's Amended Complaint.

## III.    DISCUSSION

Defendant contends that Plaintiff's allegations against him of failing to repair, or having someone else repair, the ceiling which fell upon Plaintiff's

head do not rise to the level of an Eighth Amendment conditions of confinement violation. The Court disagrees.

The Eighth Amendment protects prison inmates from cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The treatment an inmate receives while in prison and the conditions of his confinement are subject to scrutiny under the Eighth Amendment. However, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). To assert an Eighth Amendment conditions of confinement claim, a prisoner must satisfy both an objective and subjective test. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Specifically, a prisoner must show that the alleged deprivation is "sufficiently serious" and that he has been deprived of the "minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. A prisoner must also demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm," which is an objective test, and that prison officials possessed a "sufficiently culpable state of mind" and demonstrated "deliberate indifference" to his health or safety. *Id.* "Deliberate indifference" is a subjective standard under *Farmer*, the prison official-defendant must actually have known or been

aware of the excessive risk to inmate safety. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

As explained in *Beers-Capitol*, in cases based on allegations of deliberate indifference on the part of prison officials, the Supreme Court has "rejected an objective test for deliberate indifference; instead it looked to what the prison official actually knew rather than what a reasonable official in his position would have known." *Id.* at 131. Specifically, the Supreme Court "held that 'a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). This requirement of actual knowledge on the part of the official "means that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). At the same time, this subjective standard does not insulate officials from liability where such officials choose to remain deliberately indifferent to an excessive, substantial or serious risk of harm to inmates. The Supreme Court explained:

> We are no more persuaded by petitioner's argument that, without an objective test for deliberate indifference, prison officials will be

free to ignore obvious dangers to inmates. Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm would actually befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.

*Farmer*, 511 U.S. at 842. A prison official who is shown to have been actually aware of a risk to a prisoner-plaintiff can avoid liability if he shows that he responded reasonably to the risk, even if the response did not avoid the ultimate harm. *Beers-Capitol*, 256 F.3d at 132.

Here, Plaintiff alleges that Defendant Rolston subjected him to cruel and unusual punishment in violation of the Eighth Amendment because Defendant Rolston, despite being made aware of the collapsing ceiling in Plaintiff's cell, allegedly failed to repair, or have someone else repair, the ceiling before it ultimately fell upon Plaintiff's head and neck. In response, Defendant Rolston presents four arguments in dispute. The Court will address each in turn.

First, Defendant contends that these circumstances fail because Defendant submits that certain courts have held that a leaking ceiling alone is likely not sufficient to constitute a substantial risk of serious injury, citing *Quarles v. Palakovich*, 736 F. Supp. 2d 941 (M.D. Pa. Aug. 10, 2010),

- 12 -

*Cunningham v. Doe*, 2012 WL 3879245 (M.D. Pa. Aug. 13, 2012), *report and recommendation adopted*, 2012 WL 38779233 (M.D. Pa. Sept. 6, 2012), and *McIntosh v. Sabol*, 2017 WL 1380448 (M.D. Pa. Apr. 13, 2017). Whether those cases adopt such a holding is of no import since the matter at hand is not limited to "a leaking ceiling alone." Rather, the matter at hand involves a more hazardous element of falling ceiling pieces, which were allegedly a result of gradual deterioration of a leaking ceiling. Indeed, when Plaintiff returned from his quarantine period, he witnessed the deteriorated state of his ceiling from what once was merely a leak and informed Defendant Rolston of the collapsing ceiling. Furthermore, from the Defendant's cited cases, only *Quarles* is factually akin to the matter before this Court.[1] In that case, the plaintiff averred that a portion of the drywall ceiling above the prison shower fell down on him and caused injury to his head and back. *Quarles*, 736 F.Supp.2d at 942. The *Quarles* plaintiff contended that the defendants were aware of the ceiling's deterioration but nevertheless continued to use the shower cell for prisoners until it collapsed and caused Plaintiff's injury. *Id.* Tellingly, the *Quarles* court allowed the Eighth Amendment claim against

---

[1] *Cunningham* and *McIntosh* involved slip and fall injuries resulting from a leaking roof, which are distinguishable factual patterns from the present case. *See* 2012 WL 3879245 at *1 and 2017 WL 1380448 at *2-3.

certain of the defendants to proceed past the summary judgment stage of the proceedings, finding that the factual record left unresolved questions concerning the state of knowledge of those defendants and left untouched the hazardous condition of a collapsing ceiling.[2] Thus, contrary to Defendant's expectations, the *Quarles* citation undercuts their own position.

Second, Defendant contends that it is impossible to infer whether Defendant Rolston reasonably believed there was a strong likelihood the ceiling would collapse and seriously injure the Plaintiff. The Court disagrees. Whether Defendant Rolston observed the damage personally or was told about it multiple times by Plaintiff is sufficient at this stage of the proceedings to establish that Defendant Rolston had the actual knowledge to "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and … draw the inference." *Beers-Capitol*, 256 F.3d at 125.

Third, Defendant contends that even if, *arguendo*, Defendant Rolston knew of the leak in detail, there is no indication he disregarded that risk by

---

[2] The *Quarles* court found that the supervisory defendants were entitled to summary judgment because their subjective knowledge of the dangerous condition was completely lacking, a point implicitly conceded to by the plaintiff in that matter. 736 F. Supp. 2d at 950.

failing to take reasonable measures to abate it. In essence, Defendant seeks this Court to find it unreasonable to infer Defendant Rolston acted with deliberate indifference because Defendant Rolston *told* Plaintiff he was working with the maintenance staff and at least ten months passed without issue or further complaint from Plaintiff before the ceiling finally collapsed. The Court will do no such thing. A prison official acting with deliberate indifference is capable of both failing to act despite his knowledge of a substantial risk of serious harm to the inmate and feign efforts to help. Moreover, a lack of complaints for ten months from an inmate may be due to his realization that the prison officials simply do not care for his well-being and are deliberately indifferent to the substantial risks of serious harm he is facing. Such realization may have set in after several pleas for help went ignored. Accordingly, the Court finds this argument unpersuasive.

Fourth, Defendant contends that Plaintiff "knowingly and willingly" *assumed* the risk of harm by placing himself under the collapsing ceiling when he was cleaning the water beneath it—a risk, Defendant contends, that could have been avoided "perhaps by informing the facility staff of the leak that day." (Doc. 19, p. 8). This argument is riddled with flaws. First, Defendant has presented no precedent that supports an 'assumption of risk' defense to a Eight Amendment conditions of confinement claim. "The assumption of risk

- 15 -

doctrine is applicable to both negligence and strict liability claims." *Barnes v. Am. Tobacco Co. Inc.*, 984 F. Supp. 842, 868 (E.D. Pa. 1997), *aff'd sub nom. Barnes v. Am. Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998). The defense is generally not available for intentional tort or criminal conduct. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts § 68 at 484* (5th ed. 1984) ("[O]n the basis ... of public policy to discourage aggravated wrongs, [express assumptions of risk] generally are not construed to cover ... any conduct which constitutes an intentional tort."); *see also* 8 *Williston on Contracts* §19:24 (4th ed. 1998) ("An attempted exemption from liability for a future intentional tort or crime ... is generally held void."). An Eighth Amendment conditions of confinement violation is more akin to criminal conduct or an intentional tort than negligence given that the defendant's culpable state of mind of "[d]eliberate indifference is comparable to criminal recklessness, and is shown by 'something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm.'" *Quarles*, 736 F. Supp. 2d at 949 (citing *Barrand v Donahue*, 2006 WL 2982051, *2 (N.D. Ind. Oct. 16, 2006) (citations omitted). This leads the Court to find that an 'assumption of risk' defense is unavailing. Second, the Court disagrees with Defendant's conclusion that the injury may have been avoided. Whether the cell room was large enough for Anderson

to avoid the collapsing ceiling is a question of fact to be later determined. Defendant concedes this point when he states, "without further details regarding the positioning or size of the damaged area, it cannot be inferred that Plaintiff was required to live under an inescapable collapsing ceiling." (Doc. 19, p. 8). The Court agrees with Defendant's point and adds that it also cannot be inferred that Plaintiff was *not* required to live under an inescapable collapsing ceiling. Lastly, inmates are generally required to keep their cell rooms clean. Thus, Plaintiff may have simply complied with his inmate duties and did not "inform[ ] the facility staff of the leak that day" knowing it would be pointless after all his previous requests went ignored.

Accordingly, the Court finds that Plaintiff has alleged sufficient facts to support his Eighth Amendment claim and this matter will be allowed to move forward.

IV.    **CONCLUSION**

For the foregoing reasons, the Court will **DENY** Defendant's Motion to Dismiss **(Doc. 18)**. An appropriate order will issue.


s/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States District Judge**

**Dated:  March 14, 2025**
23-1499-01

- 18 -